**Myrtle G. PORTELL, Plaintiff, Appellant,**

v.

**PEVELY DAIRY COMPANY, a Corporation, Defendant, Respondent,**

and

**James W. Bannon, Defendant, Respondent.**

No. 50575.

Supreme Court of Missouri,

Division No. 1.

April 12, 1965.

Lashly, Lashly, Rava, Hyndman & Rutherford, William I. Rutherford, St. Louis, for plaintiff, appellant.

Albrecht & Homire, Edmund C. Albrecht, Jr., James L. Homire, Jr., St. Louis, for defendant-respondent Pevely Dairy Co.

WELBORN, Commissioner.

Myrtie G. Portell brought suit for $25,000 damages against Pevely Dairy Company (referred to herein as "Pevely") and James W. Bannon. The action arose out of a collision between Mrs. Portell's automobile and a Pevely delivery truck, driven by Bannon, a Pevely employee. Bannon filed a counterclaim against Mrs. Portell for his injuries in the collision. On a jury trial, a verdict was returned against the plaintiff and in favor of both defendants on Mrs. Portell's action. A $1500 verdict was returned in Bannon's favor on his counterclaim. Mrs. Portell's motion for new trial on the counterclaim and her cause of action was overruled and she appealed.

On January 31, 1964, a stipulation was filed in the circuit court for the dismissal of Bannon's counterclaim. The stipulation reads:

"By consent of the parties, judgment for defendant Bannon on his counterclaim set aside and for naught held. All matters in controversy in regard to said counterclaim having been settled said counterclaim is dismissed with prejudice with the express stipulation and agreement that said dismissal will in no manner affect or prejudice plaintiff's claim now pending."

The stipulation was signed by the attorney for Bannon and an attorney for plaintiff.

Pevely has moved to dismiss the appeal, contending that the dismissal, with prejudice, of the counterclaim operates as an adjudication on the merits, and that the settlement of the counterclaim operates to release Pevely, whose liability was dependent upon the negligence of Bannon.

In opposition to the motion of Pevely, plaintiff has filed an affidavit of the attorney who executed the stipulation on her behalf. By this affidavit, the attorney states that he was the attorney for plaintiff's insurance carrier and represented her only on Bannon's counterclaim and not on her claim for personal injuries. He states that he consulted neither the plaintiff nor the attorney representing her on her personal injury claim regarding the stipulation for dismissal, although he did inform the latter of the intention to settle the counterclaim.

In this situation, we do not consider that the rule applied in Max v. Spaeth, Mo.Sup., 349 S.W.2d 1, relied upon by Pevely, is applicable. The question is governed by the rule applied in Kirtley v. Irey, Mo.Sup., 375 S.W.2d 129, 134, that "'a liability insurer's settlement of a claim against the insured, made without the insured's consent or against his protests of nonliability, and not thereafter ratified by him, will not ordinarily bar an action by the insured against the person receiving the settlement, on a claim arising out of the same state of facts.'" Annotation, 32 A.L.R.2d 937, 938. See Rudloff v. Johnson, 8th Cir., 267 F.2d 708. The motion to dismiss the appeal is overruled.

The nature of the issues requires only a summary of the facts. The collision occurred in St. Louis County on the morning of October 3, 1960, while plaintiff was going to work. She was driving south on Pennsylvania Avenue, between Page Boulevard and St. Charles Rock Road. Rain was falling at the time. Plaintiff's version of the collision was that she reached the crest of a hill and saw the Pevely truck stopped on the shoulder, approximately 150 feet ahead and on her right. The truck, driven by Bannon, pulled onto Pennsylvania in front of plaintiff, as if to make a U-turn. Plaintiff was unable to stop and her car collided with the truck in the inside southbound lane of the four-lane roadway. Plaintiff claims to have suffered injuries which we need not here detail.

Bannon's version was that his truck had skidded into a ditch on the east side of Pennsylvania as he was going north. A tow truck pulled the truck out and across the road, headed south, on the shoulder. Bannon stated that he looked for southbound traffic, and, seeing none, started to pull onto Pennsylvania, intending to go south for approximately a block in order to make a U-turn and continue northward. As he started to drive onto the pavement, he saw plaintiff's vehicle approaching at the crest of a hill, southbound in the inside lane. When he saw plaintiff's automobile, he stopped, with his truck partly on the pavement and partly on the shoulder. Plaintiff's vehicle came directly toward the truck, "skidding at an angle," and collided with the stopped vehicle, causing injury to Bannon.

By its answer, Pevely admitted that Bannon was its agent and that he was acting within the scope of his authority at the time of the collision.

On his counterclaim, Bannon submitted an instruction charging plaintiff with negligence in several respects. Among the grounds specified was the failure of plaintiff to "keep and maintain control of her automobile at all times." Plaintiff, on this appeal, contends that, under Miles v. Gaddy, Mo.Sup., 357 S.W.2d 897, and the cases therein cited, the submission of failure to control as a specification of negligence made the instruction erroneous. She further contends that such error, although in

the submission of the counterclaim, requires the reversal of the judgment in favor of Pevely and Bannon on her original action.

Bannon filed no brief in this court. Pevely, in its brief, does not attempt to defend the instruction. Instead, Pevely's position is that the alleged error was not specifically asserted against Pevely in plaintiff's motion for new trial, and cannot, therefore, be urged here.

Plaintiff's motion for a new trial prayed for a new trial of both plaintiff's claim against Pevely and Bannon as well as of Bannon's counterclaim. Her specifications of error did not point out against which defendant the error was asserted. Thus, on the instruction here in question, the assignment was that the trial court erred in giving Instruction No. 4, offered by Bannon, on the grounds, among others, that it submitted plaintiff's failure to keep and maintain control of her automobile at all times. "Such a submission is a charge of general negligence and is confusing and constitutes a roving commission."

In Vinson v. East Texas Motor Freight Lines, Mo.Sup., 280 S.W.2d 124, relied upon here by Pevely, Vinson had sued East Texas and one Bell for injuries arising out of a collision involving three vehicles, one of each party. Bell cross-claimed against East Texas. Plaintiff had judgment against East Texas on his claim, as did Bell on his cross-claim. On East Texas' appeal, the court originally reversed both judgments because of error in Vinson's verdict-directing instruction. However, on rehearing, it was pointed out that East Texas' motion for new trial did not allege that the erroneous instruction affected the trial of Bell's cross-claim. The court also noted that East Texas, on its appeal, did not urge that the error in Vinson's instruction had prejudicial effect in the determination of Bell's cross-claim. The court concluded that no claim had properly been raised of error as between East Texas and Bell and that, in any event, fail-

ure to brief such claim on appeal would result in its waiver. 280 S.W.2d 132.

■ Vinson differs from this case. Of course, plaintiff on the appeal has asserted that the error affected the trial of plaintiff's claim. More important, in Vinson, although Vinson's action and Bell's cross-claim arose out of the same three-vehicle collision, Vinson's claim and Bell's claim were not inseparably bound together. Both could have prevailed against East Texas. In this case, plaintiff's claim and Bannon's counterclaim are such that both parties could not recover. The trial of one necessarily involved the trial of the other. The proof of Bannon's counterclaim necessarily disproves plaintiff's claim. Error which requires the reversal of a judgment favorable to a claimant will so affect the trial of an interrelated and interdependent counterclaim which terminated unfavorably to the appellant that its retrial with the original claim will be authorized, even though the appellant did not challenge the judgment against him on the counterclaim, and made no assignment of error or briefing thereof. Bramblett v. Harlow, Mo.App., 75 S.W.2d 626, 633(17, 18); Vogelgesang v. Waelder, Mo.App., 238 S.W.2d 849, 857(13).

The situation here is somewhat different from that involved in the cases last cited. In those cases, the submission had produced a plaintiff's verdict, which was reversed for error in plaintiff's instructions. Here the alleged error was in the submission of the counterclaim. The party urging no error as to it was not a party to the counterclaim. However, just as plaintiff's claim against Bannon and the latter's counterclaim were "inextricably bound together," so were plaintiff's claim against Pevely and Bannon's counterclaim against plaintiff. The only added element was Pevely's responsibility for Bannon's acts, which was admitted.

The interdependence of plaintiff's claim and Bannon's counterclaim was such that the assignment of error here relied upon

would be reasonably understood to apply to both segments of the litigation. Plaintiff's motion for a new trial requested such relief on both aspects of the case and this assignment is sufficiently related to both aspects of the case to permit its consideration in such manner.

█ As stated above, Pevely has not attempted to defend the instruction. Under Miles v. Gaddy, supra, the error is clear. In view of the interdependence of plaintiff's claim and the counterclaim, the error in the instruction was prejudicial to the proper consideration of plaintiff's claim.

Pevely does point out that the instruction under attack required the jury to find that Bannon was in the exercise of the highest degree of care at the time of the collision. Plaintiffs, whose instructions were found erroneous in Bramblett and Vogelgesang, supra, submitted instructions requiring a similar finding as a prerequisite to a plaintiff's verdict. Such clause was apparently not considered sufficient to assure that the defendants' counterclaim had received proper consideration on its merits by the jury, uninfluenced by the prejudicial effect of plaintiff's erroneous instruction on the defendant's negligence. The error complained of is presumptively prejudicial and the inclusion in Bannon's instruction of the clause here pointed to does not negative the prejudicial effect of the error therein.

Our conclusion in this regard makes it unnecessary to consider other assignments of error by plaintiff, relating to matters which are not likely to recur on a new trial.

The judgment is reversed and the cause remanded for a new trial.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.